UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

RICHARD ALLEN EARNEST, et al.,      ]
                                    ]
   Plaintiffs,                      ]
                                    ]
vs.                                 ]   6:11-cv-00906-LSC
                                    ]
NORFOLK SOUTHERN CORP.              ]
REAL ESTATE & CONTRACT              ]
SERVICES,                           ]
                                    ]
   Defendant.                       ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the Defendant, Norfolk Southern Railway Company ("Norfolk Southern"), on February 21, 2012. (Doc. 16.) Plaintiffs Richard Allen Earnest and Deborah Earnest sued Norfolk Southern for trespass, nuisance, negligence, and wantonness. (Doc. 13.) Specifically, Plaintiffs argue that Norfolk Southern's failure to maintain a drainage culvert on its adjacent property caused flooding on Plaintiff's property. Defendant's motion for summary judgment has been briefed by the parties and is ripe for review. Upon full consideration of the legal arguments and evidence cited by the

parties, it is the opinion of this Court that the motion for summary judgment is due to be granted in part and denied in part.

1.   Facts.[1]

Plaintiffs Richard Earnest and Deborah Earnest purchased 30 acres of commercial property ("Plaintiffs' Property") in the Town of Oakman, Alabama, in February 2002. Norfolk Southern owns railroad property adjacent to, and north of Plaintiffs' Property ("Railroad Property"). Norfolk Southern or its predecessors have owned the Railroad Property for over 127 years. In the past, a branch railroad line on the Railroad Property served an area coal mine. However, trains have not operated on the Railroad Property since 1988. In 1997, Norfolk Southern removed track rails, tie plates, and spikes from the Railroad Property.

When Plaintiffs' Property was purchased in 2002, it was wooded and undeveloped. Richard Earnest cleared trees, re-graded some of the land, and built a shopping center, which included a Dollar General as its primary tenant. Plaintiffs testified that they began having flooding problems in the northeast acres of their

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

property in 2007. At first, the land would stay covered with water for seven or eight days before draining. Then, the acres stopped draining, filling portions of Plaintiffs' Property with a half foot of water for months at a time until Richard Earnest used 300 dump truck loads of dirt to regrade the land. The flooded land constituted approximately three to four acres bordered by Railroad Property to the north and Washington Street to the east ("Flooded Land").

Richard Earnest testified that although the Railroad Property to the north is a higher elevation than his property and most rain water on Plaintiffs' Property drains to the south, from 2002 through 2007, water from the Flooded Land drained north onto Railroad Property through a cast iron culvert (the "Culvert") and into a drainage ditch on the north edge of the Railroad Property. Richard Earnest claims he saw part of the Culvert in 2006 or 2007, but he cannot identify its location now. He contends the Culvert became buried over the years due to build-up from dirt and mud. He maintains that the clogged Culvert caused his property to flood from 2007 until he re-graded his land in 2010.

Norfolk Southern does not have any documentation showing the existence of any drainage structure in the area of the Culvert described by Richard Earnest, nor has Norfolk Southern located any such culvert. Norfolk Southern admits that it has not maintained or inspected any drainage devices on the Railroad Property since it ceased

railroad operations there. When Richard Earnest contacted Defendant to complain about the flooding and ask about cleaning out the Culvert, Alessandro U. Rocca, who works in Norfolk Souther's real estate department, told Richard Earnest that the railroad would not clean any culvert on the property.

III.     Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

---

[2]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

   A.   Trespass.

Plaintiffs contend that Norfolk Southern is liable for indirect trespass. (Doc. 21 at 15.) "In *Rushing v. Hooper-McDonald, Inc.*, 293 Ala. 56, 300 So. 2d 94 (1974), [the Alabama Supreme] Court held that an indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property." *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946-47 (Ala. 2001). In order to establish an indirect trespass, a plaintiff must prove:

> 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability

>that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the res.

*W. T. Ratliff Co., Inc. v. Henley*, 405 So. 2d 141, 145 (Ala. 1981) (quoting *Borland v. Sanders Lead Co., Inc., Ala.*, 369 So. 2d 523, 529 (1979)).  Norfolk Southern contends that it is entitled to summary judgment on Plaintiffs' trespass claim for two reasons: (1) there is no evidence its purported action was "intentional," and (2) Plaintiffs' claim is barred by the six-year statute of limitations.

      1.    Intentional Action.

Norfolk Southern contends that there is no evidence it "intentionally" caused a substance to enter onto Plaintiffs' Property. (Doc. 17 at 18-19.) Notably, Defendant does not challenge whether there is sufficient evidence to show that a clogged culvert *caused* flooding or the diversion of silt or debris onto Plaintiffs' Property. Norfolk Southern only argues there is no evidence its actions were "intentional." "[I]n order for one to be liable to another for trespass, direct or indirect, the person must intentionally enter upon land in the possession of another or the person must intentionally cause some 'substance' or 'thing' to enter upon another's land. . . . That is, the intent to do the act which leads to the trespass is the requirement, not the intent to actually trespass." *W. T. Ratliff Co., Inc.*, 405 So. 2d at 146.

The Court agrees with Plaintiffs that there is sufficient evidence in the record for a jury to conclude that Norfolk Southern's conduct in this case was "intentional" for the purposes of establishing an indirect trespass claim. It is undisputed that as early as December 2007, Richard Earnest called Norfolk Southern and complained about flooding on his property caused by failure to maintain a culvert. (Doc. 21 at 12 ¶ 11; Doc. 24 at 4 ¶ 11.) The Norfolk Southern employee responded by saying it would not clean any culvert on the property. (*Id.*) A reasonable jury could conclude that, from at least that point onward, Norfolk Southern could foresee that its failure to clean or maintain the culvert "could lead to trespass when it rained, [and] the element of intent [is] satisfied." *W. T. Ratliff Co., Inc.*, 405 So. 2d at 146.

    2.    Statute of Limitations.

Norfolk Southern also argues that Plaintiffs' trespass claim is barred by the applicable six-year statute of limitations. (Doc. 17 at 20-21 (citing Ala. Code § 6-2-34(2)).) In support of its argument, Defendant cites to Plaintiffs' Answers to Defendant's Supplemental Interrogatories, in which Plaintiffs assert that they dug a trench in 2003 "in order to drain the swamp that developed on [Plaintiffs' P]roperty as a result of the Defendant Railroad's failure to maintain its land and drainage facilities thereon." (Doc. 18-8 at 3.) Defendant contends that this Answer establishes

that the purported trespass began well before six years prior to Plaintiffs' lawsuit; therefore, the claim is barred.

In response to Defendant's motion for summary judgment, Plaintiffs amended their Answers to Defendant's Supplemental Interrogatories, explaining that "[t]he statement in my original answer to this interrogatory that the trench was dug in order to drain the swamp that developed as a result of the railroad's failure to maintain its drainage facilities was in error. This trench did not even reach those affected acres and the swamping conditions had not even developed at the time this trench was dug. This trench had no effect on draining those acres." (Doc. 22-2 at 3.) In his deposition testimony, Richard Earnest maintained that swamp conditions did not develop on the Flooded Land until 2007, or within the six-year statute of limitations period.

Norfolk Southern moved to strike Plaintiffs' Amended Answers, arguing that "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." (Doc. 25 at (quoting *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)).) The statements at issue, however, do not meet the standard in *Van T. Junkins*. Plaintiff Richard Earnest provided an explanation for the contradictory answers: he erred. The credibility of that explanation is a question for

a jury. This Court does not make credibility decisions at summary judgment. Accordingly, Defendant's motion to strike is denied.[3]

Because there is sufficient evidence in the record to create a question of fact whether the purported trespass occurred within the applicable six-year statute of limitations, Defendant's motion for summary judgment with regard to the indirect trespass claim must be denied.

  B. Nuisance.

Norfolk Southern also contends that Plaintiffs' nuisance claim is barred by the applicable two-year statute of limitations. (Doc. 17 at 21-23 (citing Ala. Code § 6-2-38).) Defendant cites *Burge v. Jefferson County, Ala.*, 409 So. 2d 800 (1982), for the proposition that the statute of limitations for the creation of a permanent unabatable nuisance begins to run when the nuisance is created. Norfolk Southern argues that, even according to Plaintiffs, the Culvert became completely blocked in 2007—more than two years prior to the filing of their lawsuit.

However, in *Burge*, the defendant created a permanent unabatable nuisance by filling a ditch. The nuisance at issue was a permanent construction completed at the behest of the defendant. While Plaintiffs contends the Culvert in this case became

---

[3]Defendant's motion to strike is also due to be denied for failure to follow the requirements of section IV(B) of the Court's Uniform Initial Order. (Doc. 5 at 9-10.)

clogged, they argue that it clogged because Norfolk Southern failed to maintain its drainage devices– not because it had them filled in. "[F]or an improper or negligent maintenance[,] the rule applicable to an abatable condition has application." *City of Birmingham v. Leberte*, 773 So. 2d 440, 445 (Ala. 2000) (quoting *Harris v. Town of Tarrant City*, 130 So. 83, 84-85 (1930)). With an abatable nuisance, "[i]t is sufficient, if within that period damages accrue which are separable and recur not from the installation of the [drainage] system, but from its *method of maintenance or operation*." *Id.* at 446 (quoting *City of Clanton v. Johnson*, 17 So.2d 669, 672 (1944)) (emphasis in original). Because there is sufficient evidence in the record for a reasonable jury to conclude that Plaintiffs suffered damages to the Flooded Land from recurrent flooding within the time period of two years prior to the filing of this lawsuit, summary judgment is due to be denied.

    C.    Negligence.

Norfolk Southern also argues that Plaintiffs' negligence claim is barred by the two-year statute of limitations. (Doc. 17 at 24-25 (citing Ala. Code § 6-2-38(l)).) However, as early as 1897, the Alabama Supreme Court ruled that each instance of flooding constituted a "separate and distinct cause of action" for negligence when a defendant was sued for negligently maintaining a culvert. *Alabama Great Southern R. Co. v. Shahan*, 22 So. 509, 511 (Ala. 1897). As stated above, there is sufficient evidence

to convince a reasonable jury that Plaintiffs suffered damages to their property from recurrent flooding within the time period of two years prior to the filing of this lawsuit. Accordingly, summary judgment must also be denied with regard to Plaintiffs' negligence claim.

D.   Wantonness.

Defendant maintains that the evidence in the record does not sustain a claim for wantonness. "Wantonness in a trespass action is established by the mere knowledge on the part of the defendant of his invasion of the plaintiff's rights." *Chestang v. IPSCO Steel (Alabama), Inc.*, 50 So.3d 418, 433 (Ala. 2010) (quoting *Cummans v. Dobbins*, 575 So.2d 81, 82 (Ala. 1991)). Plaintiffs contend that Norfolk Southern knew its lack of maintenance of the Culvert was damaging Plaintiffs' Property because of Richard Earnest's repeated complaints to Defendant's employee, Alessandro Rocca.

However, "notice of a complaint is not the equivalent of knowledge on the part of the defendant that it was the *cause* of the problem." *Id*. at 435 (emphasis added). The Alabama Supreme Court has found that repeated complaints to a defendant's representative were sufficient to send a wantonness count to the jury when the complaints were accompanied by "frequent promises to 'take care of the problem.'" *Id*. (discussing *W.T. Ratliff*, 405 So. 2d at 146). In that case, the defendant responded to the complaints in a manner that "acknowledg[ed] fault coupled with wrongdoing."

*Id*.  Here, Norfolk Southern's representative repeatedly disclaimed liability, and Plaintiffs have not proffered any evidence that Norfolk Southern knew its failure to maintain the Culvert was actually causing damage to Plaintiffs' property and allowed the trespass to continue.  The Court will enter summary judgment in favor of the Defendant on Plaintiffs' wantonness claim.

  E. Damages.

Finally, Norfolk Southern argues that all counts should be dismissed because Plaintiffs have not proffered sufficient evidence of legally cognizable damages.  The Amended Complaint does not include a request for equitable relief.  "The appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof."  *Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007).  Norfolk Southern argues that because Richard Earnest was willing to purchase the Railroad Property adjacent to his property for 50% more per acre in 2007, 2008, and 2009 than he paid for his property in 2002, there is no evidence of any diminution in the fair market value of Plaintiffs' Property due to the purported trespass and nuisance in this case. (Doc. 17 at 29 n.16.)  Defendant's contention is simply not sufficient to meet its burden at summary judgment.  The Court will allow Plaintiffs to

present evidence regarding alleged diminution in the fair market value of their property at trial.

V.   Conclusion.

For the reasons outlined above, Norfolk Southern's motion for summary judgment will be granted with regard to Plaintiffs' wantonness claim and denied in all other respects. A separate order will be entered.

Done this <u>26th</u> day of <u>June 2012</u>.

                                                                  _____
                                                                             L. SCOTT COOGLER
                                                                  UNITED STATES DISTRICT JUDGE
                                                                                       139297